[No. 5867. Decided December 20, 1905.]

WILLIAM CLUTTER, *as Executor of the Last Will and Testament of H. W. McNeel, Deceased, et al., Appellants, v. N. L. STRANGE et al., Respondents.*[1]

REFORMATION OF INSTRUMENTS—MISTAKE—EVIDENCE—SUFFICIENCY, A claim that there was a mistake in a contract agreeing to convey a certain number of acres of a tract of land, in not describing a certain tract, entitling a party to a reformation, is not sustained where the evidence of one witness to that effect is contradicted by the other party and by the attorney who drew up the contract.

VENDOR AND PURCHASER — CONTRACTS — CONSTRUCTION — CONDITIONAL OR ABSOLUTE SALE. A contract whereby the defendants undertook to redeem the land of another from certain mortgage and judgment liens, furnish him a place to live, pay him an annuity, and reconvey a quarter section thereof after full reimbursement for their expenses, amounts to an absolute and not a conditional sale to the defendants, except as to the part to be reconveyed, and that part only is held in trust for the former owner.

SAME—RESCISSION BY PURCHASER—BREACH—FRAUD—FAILURE TO KEEP ACCOUNTS—EFFECT. Where the grantees of certain premises undertook to redeem the same from mortgage and other liens, and to reconvey a part, after full reimbursement for their advances out of the rents, issues and profits of the land, the foreclosure of the mortgage in the interest of the grantees for the purpose, as claimed, of perfecting title, will not be presumed fraudulent as to the owner so as to work a forfeiture of the contract, nor will the failure to keep account of the rents, issues and profits have such effect.

SAME—FAILURE OF TITLE—EXCUSE FOR PERFORMANCE. Grantees who undertake to recover a portion of the premises conveyed to them, upon reimbursement for advances made, are not freed from their obligation to reconvey by reason of a partial failure of the title of their grantor, where they acquired the title to such part at one-half its market value, which sum, at most, they could claim as an additional indebtedness against the property.

ACCOUNTING—CONTRACTS—ADVANCEMENTS—RENTS AND PROFITS OF LAND—ITEMS CHARGEABLE. Where premises were conveyed to the defendants, who undertook to redeem the same from mortgage and other liens, and to reconvey a part after full reimbursement out of the rents, issues and profits, the defendants are not entitled upon an

[1]Reported in 82 Pac. 1028.

accounting to credit for taxes paid or improvements made on their portion of the land, after they took possession, nor for the expense of foreclosing a mortgage on the premises incurred to enable them to gain possession of other lands; nor could they farm out the land to themselves at a profit and credit the former owner with only one-third of the crop, since they were entitled only to actual expenses.

SAME—FAILURE TO KEEP ACCOUNTS. Where grantees in a convey-ance of lands, agreed to reconvey a portion of the premises upon being fully reimbursed for advances out of the net rents, issues and profits of the land, they are bound to keep proper accounts, and must be held to be fully reimbursed where no accurate accounts were kept for a period of years, except such as could be prepared from disconnected data and memory, showing' many discrepancies and errors.

Cross-Appeals from a judgment of the superior court for Whitman county, Chester F. Miller, J., entered April 29, 1905, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in action on contract. Reversed.

*James A. Williams* and *Denton M. Crow,* for appellants.

*Sullivan, Nuzum & Nuzum,* for respondents.

RUDKIN, J.—On the 27th day of July, 1880, H. W. McNeel entered into a contract with the Northern Pacific Railroad Company for the purchase of the W. ½ of Sec. 33, and the N. W. ¼ of Sec. 27, Tp. 19, N., R. 45, E., W. M., for the sum of $1,920, $480 of which was paid on the execu-tion of the contract. Some controversy thereafter arose be-tween McNeel and the Railroad Company as to the descrip-tion of the land which should have been embraced in this contract, McNeel claiming that the contract should have in-cluded the east half of said section thirty-three, instead of the west half thereof. By reason of this controversy, or for some other cause, no further payments were made on the contract, and on the 22d day of November, 1882 the Rail-road Company declared a forfeiture and cancelled the same. Whether McNeel had notice of this forfeiture does not ap-pear. Some of the witnesses refer to an assignment of this

contract by McNeel, but no evidence of such assignment appears in the record. McNeel continued in possession of the northwest quarter of section twenty seven, above described, and cultivated and improved the same, until it was turned over to a purchaser at execution sale, as hereinafter stated.

In 1895 the Railroad Company notified McNeel that he must purchase the last described quarter section, or the same would be sold to others, but nothing further was done. On the 7th day of March, 1896, the above quarter section, and .720 acres of other lands, to which McNeel held the legal title, were sold under execution, on a judgment against said McNeel in favor of one Edmison. Edmison became the purchaser at such sale, and on the 12th day of March, 1896, assigned all his rights as such purchaser to one W. L. McNeel, who immediately entered into possession of all the lands so purchased. On the 15th day of February, 1897, the said H. W. McNeel conveyed to the defendant N. L. Strange all the lands embraced in said execution sale, and on the 18th day of February, 1897, and as a part of the same transaction, the said McNeel and the defendants N. L. Strange, M. Doneen, E. J. Doneen, and D. T. Doneen entered into the following written agreement:

"This agreement, made and entered into this 18th day of February, 1897, by and between N. L. Strange, M. Doneen and D. T. Doneen, of Oakesdale, .Wash., parties of the first part, and H. W. McNeel of Whitman County, Washington, party of the second part,

"Witnesseth: That, whereas, the said party of the second part has sold, transferred and conveyed unto the above named N. L. Strange by deed bearing date of the 15th day of February, 1897, all of the following described real estate, situate, lying and being in the county of Whitman and state of Washington, particularly described as follows: to wit: west half of section twenty-seven (27), east half of section thirty-three (33), south half of section thirty-four (34), and the west half of the northwest quarter of section thirty-four (34), all in township nineteen (19), North, Range 45, E., W. M.; and,

"Whereas, the said described lands are encumbered by various mortgages and judgments, and have been sold under a certain judgment in favor of one Matthew Edmison; and,

"Whereas, the said parties of the first part are about to undertake to redeem the said lands and with the issues, rent and profits thereof, pay out and clear the same from the encumbrances now against it, a part or the whole thereof; .

"Now, therefore, it is hereby agreed that if said first parties secure the redemption of said lands from the sale under the judgment of said Matthew Edmison, and succeed in securing the crop from all or any portion thereof during the season of 1897, they bind themselves out of the proceeds of said crop to pay said second party one hundred dollars.

"That, if said first parties secure title to all or any portion of said lands, then they agree to pay the said second party an annuity of one hundred dollars per year, and in case they secure and hold all the said lands in addition to one hundred dollars per year, they promise and agree to furnish said second party a house on the place to live in, also feed for two horses, and sufficient land for a garden for his own use; and, further,

"That said first parties agree that if they secure the redemption of said lands from said judgment sale, they will apply the rents, issues and profits therefrom to the payment of the encumbrances, liens and judgments against the same and the interest thereon, and after the said lands have paid out, from the rents, issues and profits thereof, and the said first parties or either of them have received back any money they may have advanced to carry said lands, or to pay off any lien or encumbrance on the same, or any part thereof, together with interest on any sum or sums at the rate of ten per cent per annum until paid, and the said lands are fully paid out from the rents and profits of the same, then said first parties agree to make or cause to be made, executed and delivered to said second party, a good and sufficient deed on one quarter-section of said lands, and thereafter the obligation to pay said second party said one hundred dollars per annum or to furnish him a house, ground for garden or feed for horses, shall cease and such deed to said quarter-section of land shall fully terminate and fulfill from that time all obligations under this contract."

Soon after the execution of said last-mentioned agreement, the defendant Strange commenced proceedings in the superior court of Whitman county, against W. L. McNeel and others, to enforce the right of redemption from the execution sale, under which said McNeel and his tenants held possession of the property described in the above contract. On the 10th day of July, 1897, a judgment was entered in said proceeding, by consent, allowing a redemption by the said Strange, upon the payment of the sum of $3,000, each party to pay his own costs. About this time an action was commenced by the Northern Pacific Railway Company in the circuit court of the United States to recover from H. W. McNeel, and his tenant in possession, the northwest quarter of said section twenty-seven. The defendants claim that this was the first intimation they had that the title of said H. W. McNeel to said last described tract was defective. The defendants thereupon entered into negotiations with the railway company with a view of acquiring title to said quarter section. They presented to said company a certified copy of the deed from McNeel to Strange, and the Railway company entered into a ten year contract to convey said lands to the defendant E. J. Doneen for the sum of $1,280. It was agreed, at the same time and as a part of the same transaction, that the ejectment suit pending in the circuit court of the United States should be dismissed.

In the latter part of the year 1897, or early in the year 1898, Alfred Coolidge and W. J. Davidson, at the instance of the defendants, advanced the necessary funds to take up a mortgage in the sum of $9,000 with accrued interest, theretofore executed by H. W. McNeel to the Solicitors Loan & Trust Company, on a part of lands described in the above contract, and 80 acres additional which the said H. W. McNeel had theretofore conveyed to a third party. The mortgage was first assigned by the Solicitors Loan & Trust Company to S. J. Chadwick, attorney for the defendants, and thereafter by said Chadwick to the said Coolidge, as

collateral security for said loan. On the 8th day of February, 1898, Coolidge, at the instance and request of the defendants, commenced an action in the superior court of Whitman county to foreclose said mortgage against the said H. W. McNeel, the defendants in this action, and others.

There is a ·dispute between the parties as to the object of this foreclosure. One object apparently was to subject to the payment of the mortgage debt, the 80 acres of land which the mortgagor had conveyed to a third party after the execution of the mortgage and prior to the conveyance of the remaining lands to the defendant Strange. The plaintiffs claim that another object was to foreclose the rights of H. W. McNeel under the above contract. The defendants deny this, and claim that the object of the foreclosure was to cut off or shut out certain subsequent liens, and that the foreclosure was in the interest of McNeel, as well as in the interest of the defendants themselves. A judgment was duly entered in the foreclosure suit, and the mortgaged property was sold on execution to the plaintiff Coolidge. After Coolidge was paid in full for the advances made by him, he assigned the certificate of sale to Davidson to secure the advances made by the latter. Davidson obtained a sheriff's deed, and after all advances made by him were paid, he conveyed the property to the defendants in such portions .as they had agreed upon between themselves. These deeds are now in the bank, held in escrow, to abide the result of this action.

H. ·W. McNeel died testate on the 23rd day of July, 1902, his will was duly admitted to probate, and the plaintiffs in this action are the executor of the will and the beneficiaries therein named. In the month of July, 1897, the defendants entered into the possession of all the lands described in the agreement above set forth, and have continued in possession ever since. They paid H. W. McNeel the annuity of $100 per year during his life time, and furnished him a house to live in, feed for two horses, and sufficient land for a garden, as required by the terms of their contract. The defendants

have also paid off all judgments, liens and encumbrances against said land, but whether they have been reimbursed for such payments out of the rents, issues and profits is a question we will consider hereafter. Ever since 1897 the defendants have claimed, and now claim, that they were relieved from any obligation to reconvey any portion of said lands to said McNeel, or to his successors in interest, by reason of the failure of McNeel's title to the northwest quarter of said section twenty-seven, as hereinbefore stated. This action was brought by the plaintiffs to enforce the rights of McNeel under said contract.

The pleadings are voluminous, and we will content ourselves by stating briefly the claims of the respective parties. The plaintiffs first contend that there was a mistake by the scrivener in the preparation of the contract between the parties in this: it was mutually agreed that the defendants should reconvey to the said McNeel the S. E. $\frac{1}{4}$ of Sec. 34, Tp. 19, N., R. 45, E., W. M., and all that portion of the S. W. $\frac{1}{4}$ of said section lying east of the county road and adjoining said S. E. $\frac{1}{4}$, but that through said mistake such provision was omitted from the written contract.

The next contention is that the defendants have at all times denied any rights in said McNeel under said contract; that they were guilty of fraud in the foreclosure of said Solicitors Loan & Trust Company mortgage, whereby they sought to foreclose the interest of said McNeel under said contract, and that they have failed to account to McNeel, or to his successors in interest, for the rents, issues, and profits of said land, or to keep any accounts whatever. By reason of these facts, it is contended that defendants have forfeited all rights under said contract, and should be compelled to reconvey the whole of said property to the plaintiffs.

The next contention is that said contract should at least be reformed so as to correct the mistake therein, and that as thus reformed, the defendants should be required to reconvey

to the plaintiffs the property which they agreed to reconvey. The defendants, on the other hand, contend that they are relieved from the obligation to reconvey any portion of said lands to the said McNeel or to his successors in interest, or to account for the rents, issues, and profits thereof, by reason of the failure of title to a portion of said lands as herein stated.

The court found against the plaintiffs on the question of mistake, and against the contention of the defendants that they were relieved from any obligation to reconvey a part of the lands, on account of the failure of title to another part. The court further found that there was still due the defendants, at the time of the trial, the sum of $4,135.21, on account of disbursements made by them under their said contract, over and above the rents, issues and profits received by them; and that, as soon as the defendants should receive such additional sum, with interest at the rate of ten per cent per annum, from such rents, issues, and profits, they should convey to the plaintiffs 160 acres of said land; and that, if the parties could not agree on the part to be conveyed, evidence should be taken to determine the reasonable value of all the lands included in said contract, and that plaintiffs should have judgment against the defendants for the reasonable value of 160 acres thereof, and that such judgment should constitute a lien on the whole of said lands until paid and satisfied. From this judgment, both parties have appealed.

Inasmuch as both parties are appellants, we will refer to them as designated in the court below. The finding of the court that there was no mistake or omission in the written contract between the parties is in accordance with the weight of the testimony. The evidence on this point is meager and unsatisfactory, resulting largely from the death of one of the parties and the legal disqualification of the others to testify. One witness testified, on the part of the plaintiffs, that the defendant Strange admitted to him, both before

and after the execution of the contract, that they were to
reconvey to McNeel the lands now claimed by his heirs or
devisees. The plaintiffs claim that this witness is corrobo-
rated by the fact that McNeel took up his residence on this
particular tract, and resided there up to the time of his death.
But the defendants were not required to furnish him a resi-
dence on any particular portion of the lands conveyed, and
it would therefore seem that his residence on the tract which
the plaintiffs now claim was as consistent with the conten-
tion of the defendants as with that of the plaintiffs. On
the other hand, the defendant Strange denied that he made
any such statements, and the attorney who prepared the
contract for the parties testified that, while there was some
conversation between McNeel and the defendants as to the
particular tract that should be reconveyed, yet the defend-
ants refused absolutely to agree to reconvey the tract now
claimed by the plaintiffs, and that the agreement was exe-
cuted in its present form advisedly and intentionally. The
contention of the plaintiffs, therefore, in this regard cannot
prevail.

The second contention of plaintiffs is equally without
merit. It is stating the case too broadly to say that the de-
fendants held all the lands conveyed to the defendant Strange
in trust. The conveyance to Strange was absolute and un-
conditional, and McNeel retained no present or prospective
interest in any of the property, except the quarter section
to be reconveyed. The defendants undertook to pay a cer-
tain annuity, furnish a place to live, etc., which they have
done. They undertook to pay off the indebtedness against
the property, so as to relieve McNeel and the property that
might be reconveyed to him from that burden, and this they
have done. They undertook to reconvey 160 acres of the
land to him, but this they have refused to do. The pleadings
in the foreclosure suit give color, at least, to the claim that
one of the objects of said suit was to foreclose McNeel's rights
under the contract, but fraud will not be presumed, and said

suit may have been instituted from honest motives and without any intent to defraud. There is some foundation for the claim that the defendants were relieved from the duty to reconvey any part of the property, by reason of the failure of title to another part, and they forfeit none of their rights by asserting that claim. McNeel accepted his annuity and support from the defendants during his lifetime, and permitted them to remain in possession of the property and pay off the encumbrances against it, without complaint or protest of any kind, so far as the record discloses. If the defendants have not kept proper accounts, equity will protect the rights of the plaintiffs, without depriving the defendants of the fruits of seven or eight years of honest toil. This contention of the plaintiffs is wholly inconsistent with the conduct of him under whom they claim, and with the maxim that he who seeks equity must do equity.

Nor can we uphold the contention of the defendants that they are freed from the obligation to reconvey by reason of a defect in the title to one quarter section of the land. We are not called on to decide whether McNeel had, in fact or in law, any interest in this quarter section at the time of the conveyance. We are satisfied, from an examination of the record, that the claim of McNeel and the settlement of the pending lawsuit was an inducement to, and a part consideration for, the sale from the Railway Company to Doneen. The defendants acquired the property for not to exceed one-half its market value, and their relations to McNeel were such that a court of equity will not permit them to hold it against him or those claiming under him. The utmost that can be claimed in favor of defendants is that there was this additional indebtedness against the land which they had not bargained for.

The only remaining question is that of the accounting. The contract between the parties provided that the rents, issues and profits of the lands conveyed should be applied to the payment of the encumbrances, liens, and judgments

against the same.    This language would not include taxes levied against the property subsequent to the conveyance. Through the conveyance to Strange, the defendants became the absolute owners of the property, except that portion agreed to be reconveyed, and the duty to pay taxes thereafter levied devolved upon them and cannot be imposed on the plaintiffs, unless the contract so provides.    We are satisfied that the language of the contract only embraces encumbrances, liens, and judgments against the property at the time the contract was entered into, and the payment of taxes, subsequently levied, out of the rents, issues, and profits was unauthorized.    The defendants were therefore improperly given credit for such taxes, amounting to about $1,700.

The defendants were also erroneously given credit for numerous items of expense, aggregating considerable sums in all, for permanent improvement on their own lands, such as digging a well, building houses, bridges, fences, etc.    We are also of opinion that the principal object of the foreclosure of the Solicitors Loan & Trust Company mortgage was to enable the defendants to acquire, for their own benefit, the 80 acres of land subject to the mortgage, which McNeel had conveyed to a third party.    Inasmuch as this foreclosure was largely, if not solely, for the benefit of the defendants, the plaintiffs should not be charged with any of the expenses thereof.    In the accounting the plaintiffs were charged with certain items for insurance, but when a loss occurred, for which the defendants received $388, the plaintiffs were allowed no credit therefor.    During the years 1903 and 1904, some of the defendants, at least, farmed the lands allotted to them under the partition agreed upon between them, and gave the plaintiffs credit for the value of one third of the crop.    This method of accounting is wholly improper.    The plaintiffs were entitled to credit for the value of the crops, less the actual expenses.    The defendants could not be both landlord and tenant, and reap a profit both ways.

In addition to all this, the defendants kept no accounts

whatever as between themselves and McNeel, or the plaintiffs. They frankly admit that such is the fact. They simply deposited the proceeds of the sale of the crops in bank, checked out for expenses, and had periodical settlements as between themselves. They never kept a book or an account for the purpose of making a settlement with McNeel or his successors. The law clearly imposed upon them the burden of keeping true and accurate accounts, and they must suffer the legal consequences resulting from such failure. The account as rendered, consisting of numerous items, running over a period of several years, was made up during the progress of the trial in the court below. It was prepared from disconnected data and largely from memory. From such an accounting, the court was able to discover that the defendants in several instances claimed credit twice for the same disbursement, through the medium of checks, promissory notes and tax receipts. How many more such discrepancies remain undiscovered we do not know. The defendants failed absolutely to show, by proper accounts, that they have not been fully reimbursed, from the rents, issues, and profits, for all disbursements made in settlement and satisfaction of the encumbrances, liens, and judgments against the property, and the court should therefore have directed them to reconvey to the plaintiffs at once.

For this error, the judgment is reversed, and the cause is remanded to the court below, with directions to enter a decree adjudging the plaintiffs to be the owners of an undivided two-thirteenths interest in the following described lands, to wit: The West half of section twenty-seven, the East half of section thirty-three, the South half of section thirty-four, and West half of the Northwest quarter of section thirty-four, all in township nineteen, North, of range forty-five, East, W. M., and requiring the defendants N. L. Strange, E. J. Doneen, and M. Doneen to account to the plaintiffs for two-thirteenths of the net rents, issues, and

profits of all of said lands since the date of the judgment in the court below, April 24, 1905, and for costs in that court; and unless the parties agree upon the quarter section to be conveyed to the heirs of H. W. McNeel, deceased, the court shall proceed to partition said lands as between the plaintiffs and Strange and the Doneens, in the manner provided by law, awarding to the plaintiffs two-thirteenths thereof. The plaintiffs will recover their costs on this appeal.

MOUNT, C. J., FULLERTON, HADLEY, DUNBAR and ROOT, JJ., concur.

CROW, J., having been of counsel, took no part.